# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED FINANCIAL CASUALTY COMPANY, | Civil No. 14-816 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| BRADLEY NELSON, | |
| Defendant. | |

William L. Davidson, **LIND JENSEN SULLIVAN & PETERSON, PA**, 901 Marquette Avenue South, Suite 1300, Minneapolis, MN 55402, for plaintiff.

Kelly M. Klun, **KLUN LAW FIRM PA**, 1 East Chapman Street, P.O. Box 240, Ely, MN 55731, for defendant.

Plaintiff United Financial Casualty Company ("UFCC") brings this declaratory judgment action against Defendant Bradley Nelson ("Nelson"). UFCC insured, under a Commercial Auto Policy ("the Policy"), a semi-tractor and trailer owned by Nelson. In 2011, Nelson's semi-tractor collided with a snowmobile whose owner did not have auto insurance on the vehicle. Nelson is attempting to obtain underinsured coverage from UFCC for injuries he sustained in the accident. UFCC seeks an Order from the Court establishing that a snowmobile is not an automobile as defined by the Policy and thus is not an "underinsured auto" for purposes of coverage under the Policy. UFCC has filed a motion for summary judgment based on the plain language of the Policy. Viewing the

facts in the light most favorable to Nelson as the nonmoving party, the Court finds that no genuine issue of material fact remains as to whether snowmobiles constitute "autos" under the Policy.  Therefore, the Court will grant UFCC's motion for summary judgment.

## BACKGROUND

### I.   UNDERLYING EVENTS

Bradley Nelson owned and drove a 2005 Kenworth T800 semi-tractor ("semi-tractor") and a 2006 Savage Trailer ("trailer").  (Compl. ¶ 7, Mar. 24, 2014, Docket No. 1; Aff. of Brian A. Wood ("Wood Aff."), Ex. 4 (Commercial Auto Insurance Coverage Policy ("Policy")) at 7, Oct. 27, 2014, Docket No. 19.)[1]  Nelson's semi-tractor and trailer were both insured through UFCC under a Progressive Commercial Auto insurance Policy.  (Policy at 7.)

On January 29, 2011, Nelson was driving his semi-tractor and trailer southbound on Minnesota County Road 4 / Vermilion Trail ("Vermilion Trail") in Colvin, Minnesota.  (Wood Aff., Ex. 3 (State of Minnesota Department of Public Safety Accident Report ("Accident Report")).)  At approximately 4:56 PM, 17-year old Joseph James Tynjala ("Tynjala") attempted to cross Vermilion Trail from the east ditch on a 1996 Ski-Doo MXZ snowmobile.  (*Id.*)  Tynjala failed to yield the right of way to Nelson's semi-tractor.  (*Id.*)  Nelson was traveling approximately 50 miles per hour and attempted to swerve to avoid Tynjala's snowmobile.  (*Id.*)  He was unable to avoid the snowmobile, however,

---

[1] Unless otherwise specified, all citations refer to the CM/ECF pagination.

and struck Tynjala head-on.  (*Id.*)  Nelson's semi-tractor and trailer then jackknifed, running over Tynjala and lodging the snowmobile under the trailer.  (*Id.*)

The accident report filled out by Deputy Luke Alan Hendrickson indicated that Tynjala was at fault for the accident because he failed to yield the right of way.  (*Id.*)  The snowmobile Tynjala was riding belonged to Carol Alvina Tynjala.  (*Id.*)  It was registered in Minnesota, (Wood Aff., Exs. 1-2), and not insured by an auto insurance policy[2] at the time of the accident, (Accident Report).  As a result of the accident, Nelson sustained injuries.  (Compl. ¶ 11.)  At oral argument, the parties noted that Nelson subsequently received approximately $100,000 from Carol Tynjala's homeowner's insurance policy.

## II.    THE INSURANCE POLICY

Because Tynjala's snowmobile was not insured by an auto insurance policy, Nelson seeks underinsured motorist coverage from UFCC under his Commercial Auto Policy.  Under the Policy, UFCC agrees to pay damages to an insured individual in the event of an accident involving an "underinsured auto."  (Policy at 45.)  The "Underinsured Motorist Coverage" provision in the Policy states:

> **INSURING AGREEMENT – UNDERINSURED MOTORIST COVERAGE**
>
> Subject to the Limits of Liability, if **you** pay the premium for Underinsured Motorist Coverage, **we** will pay for damages, other than punitive or

---

[2] It appears that Carol Tynjala's homeowner's policy covered the snowmobile.  (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Pl.'s Mot. for Summ. J.") at 1 & n.1, Oct. 27, 2014, Docket No. 18.)  As a result, Tynjala's snowmobile was an underinsured vehicle.  In light of the summary judgment posture and the requirement that the Court view the facts in the light most favorable to the nonmoving party, the Court will consider – and refer to – Tynjala's snowmobile as an underinsured vehicle under the Policy.

exemplary damages, which an **insured** is legally entitled to recover from the **owner** or operator of an **underinsured auto** because of **bodily injury**:

1. sustained by an **insured**;

2. caused by an **accident**; and

3. arising out of the ownership, maintenance, or use of an **underinsured auto**.

(*Id.*)  Because Nelson paid the premium for Underinsured Motorist Coverage, he was entitled under the Policy to payment from UFCC for damages he sustained in an accident involving an underinsured auto.  The Policy offers a definition for each of the bolded terms in the Underinsured Motorist Coverage provision.  The only relevant, disputed terms in this section of the Policy, for the purposes of this litigation, are "auto" and "underinsured auto."  The Policy defines "auto" as follows:

"**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.  It does not include **mobile equipment**. . . .

(*Id.* at 12.)  "Mobile equipment," which is excluded under the Policy's definition of "auto," is then defined in a separate section as:

[A]ny of the following types of land vehicles including, but not limited to, any attached machinery or equipment:

a. Bulldozers, farm implements and machinery, forklifts and other vehicles designed for use principally off public roads;

b. . . .

c. Any vehicle that travels on crawler treads, or that does not require licensing in the state in which **you** live or **your** business is licensed . . . ."

(*Id.* at 14.)  In addition to defining "auto," the Policy specifically defines "underinsured auto."  Under the Policy, an "underinsured auto" is:

> [A]n **auto** or trailer of any type to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but its limit of liability for **bodily injury** is less than the damages which an insured is entitled to recover from the **owner** or operator of that **auto** because of **bodily injury**. . . .

(*Id.* at 46.)  The Policy explicitly excludes from the category of "underinsured auto" "any auto or equipment . . . designed mainly for use off public roads, while not on public roads."  (*Id.*)

Nelson argues that Tynjala's snowmobile is an "underinsured auto" for the purposes of the Policy.  UFCC has brought a declaratory judgment action to establish that they do not owe Nelson any further benefits under the Policy for this accident.  (Compl.)  UFCC has moved for summary judgment on the grounds that the Policy does not cover snowmobiles.  (Pl.'s Mot. for Summ. J., Oct. 27, 2014, Docket No. 16.)

## ANALYSIS

### I.  STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all

reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).

## II.   INSURANCE POLICY INTERPRETATION

"'The interpretation of an insurance policy, including the question of whether a legal duty to defend or indemnify arises, is one of law'" for a court to decide. *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013) (quoting *Auto-Owners Ins. Co. v. Todd*, 547 N.W.2d 696, 698 (Minn. 1996)). When interpreting an insurance policy under Minnesota law, courts treat the policy like a contract, "ascertain[ing] and giv[ing] effect to the intentions of the parties as reflected in the terms of the insuring contract." *Id.* (internal quotation marks omitted). Courts "do not construe individual words or phrases in insurance policies in isolation. Rather, when determining if an ambiguity truly exists, [courts] read the policy as a whole . . . ." *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co., Inc.*, 825 N.W.2d 695, 706 (Minn. 2013). "Language in a policy is ambiguous if it is susceptible to two or more reasonable

interpretations." *Wolters*, 831 N.W.2d at 636. "[A] court has no right to read an ambiguity into the plain language of a policy in order to provide coverage . . . and, in undertaking such an assessment, the court must fastidiously guard against any invitation to create ambiguities where there are none." *Life Rehab Servs., Inc. v. Allied Prop. & Cas. Ins. Co.*, 616 F. Supp. 2d 924, 935 n.9 (D. Minn. 2007) (internal quotation marks and alterations omitted).

Under the UFCC Policy at issue in this case, underinsured coverage only applies if an insured sustains an injury from an accident involving an "underinsured auto." Thus, the Court's inquiry is focused on whether a snowmobile is an "underinsured auto." More specifically, because there is no dispute in this case that the snowmobile was underinsured, the central issue for the purposes of this summary judgment motion is whether a snowmobile qualifies as an "auto" under the Policy. Because the Policy's definition of "auto" contains two main clauses, the Court's inquiry will proceed in two stages. The first clause implicitly excludes from coverage any vehicles not "designed for travel on public roads." (Policy at 12.) The second clause extends coverage to "any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged." (*Id.*) The Court will address each clause in turn.

### A. Designed for Travel on Public Roads

To qualify as an "auto" under the Policy, a vehicle must be "designed for travel on public roads." (Policy at 12.) Although the Policy does not define "designed,"

Minnesota courts have previously defined the term in a similar context. In *Stepec v. Farmers Insurance Co.*, 222 N.W.2d 796 (Minn. 1974), the Supreme Court addressed the question of "whether a snowmobile is a 'motor vehicle' within the meaning of [a now-repealed Minnesota statute], relating to uninsured-motorist coverage." *Id.* at 797. The court held that a snowmobile was not a motor vehicle under the statute, in part because snowmobiles are not "designed for use upon a highway." *Id.* at 798 (quoting Minn. Stat. § 70.21, subd. 5). In reaching its conclusion, the court adopted the definition of "designed" in Webster's Third New International Dictionary: "to plan or produce with **special intentional adaptation** to a specific end." *Id.* (emphasis added) (internal quotation marks omitted). The Minnesota Court of Appeals recently reinforced this definition, quoting *Stepec*'s language in determining that a farm tractor was not a "motor vehicle" for purposes of an uninsured motorist coverage policy because it was not "designed for use on public highways." *Kastning v. State Farm Ins. Cos.*, 821 N.W.2d 621, 626-27 (Minn. Ct. App. 2012).

Applying this definition, the Court finds that a snowmobile is not an "auto" under Nelson's Policy, because it is not produced with special intentional adaptation for travel on public roads. In fact, it appears that the opposite is true. The Snowmobiler's Safety Handbook for a 1996 Ski-Doo MXZ snowmobile – the type of snowmobile involved in the accident in this case – cautions snowmobilers to "[a]void road traveling" because "[t]he snowmobile is **not designed to operate** or turn **on paving**." (Wood Aff., Ex. 5 (1996 Ski-Doo MXZ Snowmobiler's Safety Handbook ("Snowmobile Safety Handbook")) at 92 (emphasis added).) The Snowmobile Safety Handbook further

reminds snowmobilers that a "snowmobile is not designed to operate on bare pavement and steering on this type of surface is more difficult." (*Id.* at 88.)

The Minnesota Supreme Court addressed this precise issue in *Stepec*. In *Stepec*, the court relied on Minnesota's statutory definition of a snowmobile as "a self-propelled vehicle **designed** for travel on snow or ice steered by skis or runners."[3] *Stepec*, 222 N.W.2d at 798 (quoting Minn. Stat. § 84.81, subd. 3). The court reasoned that a vehicle primarily "designed for travel on snow or ice" was not a vehicle intended for the purpose of travel upon a public highway. *Id.* The court's conclusion is bolstered by the fact that the Minnesota legislature prohibits "operat[ing] a snowmobile upon the roadway, shoulder, or inside bank or slope of any trunk, county state-aid, or county highway in this state . . . . No snowmobile shall be operated at any time within the right-of-way of any interstate highway or freeway within this state." Minn. Stat. § 84.87, subd. 1 (2014).

Nelson disputes this conclusion and argues that snowmobiles can, under some circumstances, constitute automobiles. Specifically, Nelson relies on *Oberstar v. State Farm Mutual Automobile Insurance Co.*, 222 N.W.2d 557 (Minn. 1974), in which the Minnesota Supreme Court found that snowmobiles constituted "uninsured automobiles" under an insurance policy. In *Oberstar*, one snowmobile was traveling along a public highway when it was struck by another snowmobile. *Id.* at 558. The policy language excluded from the definition of "uninsured automobile" any "land motor vehicle

---

[3] *Stepec* cites the version of the statute that was in place in 1974 when the decision was rendered. The current text of the statute is slightly different, although largely the same in substance: "a self-propelled vehicle originally manufactured and designed for travel on snow or ice steered by skis or runners." Minn. Stat. § 84.81, subd. 3 (2014).

designed for use principally off public roads **except while being used on public roads**." *Id.* at 559 (emphasis added) (internal quotation marks omitted).  The Supreme Court concluded that although snowmobiles would not normally be covered by the policy, the final clause in the policy provision contemplated situations in which vehicles other than conventional automobiles would be covered because they were being operated in much the same manner as an automobile.

Nelson contends that the language in the Policy in this case is similar, because the definition of "underinsured auto" excludes "any auto or **equipment** . . . designed mainly for use off public roads, **while not on public roads**."  (Policy at 46 (emphasis added).) Nelson maintains that this language anticipates that equipment "designed mainly for use off public roads" might, on occasion, be used on public roads, and therefore would fall within the Policy's definition.  Under this reading, Tynjala's snowmobile would not be excluded from coverage for the same reasons the snowmobile in *Oberstar* was not excluded.  Not only does the definition contemplate that equipment might be used on public roads, but also the use of the word "equipment" in the "underinsured auto" exclusion envisions coverage for more than solely autos, including, for example, mobile equipment such as vehicles that operate on crawler treads.  Snowmobiles, Nelson contends, operate on crawler treads and therefore constitute "mobile equipment" as defined by the Policy.  (Policy at 14 (defining "mobile equipment" as, among other things, "[a]ny vehicle that travels on crawler treads").)

Although Nelson argues that everyone agrees the accident occurred on a public road so the "while not on public roads" exclusion does not apply, the Court finds that the

facts in this case differ from those in *Oberstar* in a significant way.   In *Oberstar*, the court concluded that the snowmobiles were "being used **on** a county highway."   222 N.W.2d at 559 (emphasis added).   In this case, by contrast, Tynjala was traveling in a roadside ditch and had barely begun to cross the road when he was struck by Nelson's trailer.   He was not traveling along the public road, using it in the same manner as a car or truck.   Thus, the Court will not extend the Policy's language to cover Tynjala's snowmobile, particularly under these circumstances.

Even if the Court were to accept Nelson's *Oberstar* argument, which would allow him to escape automatic exclusion under the "underinsured auto" provision (which excludes vehicles not for use on public roads), Nelson still cannot recover under the Policy.   Even if Tynjala's snowmobile is not excluded under the "underinsured auto" **exclusion** because the Court finds that it was being used on a public road, neither is it covered by the main text of the "underinsured auto" provision.   "Auto" status is a prerequisite to coverage under the "underinsured auto" provision, (Policy at 46), and a snowmobile is not an "auto" if it is mobile equipment by virtue of traveling on crawler treads, (*id.* at 12, 14).   They are mutually exclusive categories, because the Policy expressly excludes "mobile equipment" from the definition of "auto," and Nelson's position that snowmobiles are "equipment" cannot be reconciled with his argument that the Court should treat the snowmobile as an "underinsured auto."   The Court will therefore reject this argument.

In light of the uncontroverted explanation in the snowmobile handbook that snowmobiles are not designed to operate on pavement and the Minnesota courts' rulings

in *Stepec* and *Kastning*, the Court concludes that a snowmobile is not designed for use on public roads. Therefore, it does not fall within the first clause of the Policy's definition of an "auto." The Court will turn next to the argument that snowmobiles might constitute "other land vehicles subject to motor vehicle insurance laws" under the second clause of the Policy's "auto" definition.

### B.      Other Land Vehicles Subject to Motor Vehicle Insurance Law

The second clause of the Policy's "auto" definition refers to "any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged." (Policy at 12.) UFCC argues that snowmobiles do not fall under this provision because they are not subject to the motor vehicle insurance provisions of the Minnesota No-Fault Automobile Insurance Act ("No-Fault Act"), which sets out the required insurance coverage for different types of vehicles in Minnesota. As a result, it does not satisfy the conditions for coverage under the Policy.

Under the No-Fault Act, a vehicle is not considered a "motor vehicle" unless it "(a) is required to be registered pursuant to chapter 168, and (b) is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property." Minn. Stat. § 65B.43, subd. 2. As to the first prong of the No-Fault Act's "motor vehicle" definition, the Court concludes that snowmobiles need not be registered under chapter 168. Minnesota Statute § 168.002, which regulates vehicle registration, taxation, and sale, is referenced in the No-Fault Act

and defines different types of vehicles for the purposes of registration and taxation. Under the statute, the definition of "motor vehicle" specifically notes that "[i]t does not include snowmobiles."   Minn. Stat. § 168.002, subd. 18(a).   As to the second requirement, the Court will apply its finding from the previous section of this Order that snowmobiles are not vehicles "designed . . . for use primarily upon public roads, highways or streets."  Minn. Stat. § 65B.43, subd. 2; *see also Stepec*, 222 N.W.2d at 798-99; *Kastning*, 821 N.W.2d at 626-28.

Because snowmobiles are neither required to be registered pursuant to Minnesota Statute § 168 nor designed for travel on public roads, the Court concludes that they are not "motor vehicles" under the No-Fault Act.[4]   Therefore, they do not qualify for coverage under the second clause of the Policy's "auto" definition.   Accordingly, the Court will grant UFCC's motion for summary judgment on the grounds that snowmobiles are not covered by the Policy.

Although the No-Fault Act, combined with Minnesota Statute § 168, clearly excludes snowmobiles from the ranks of "motor vehicles," the Court observes that this arrangement is not in keeping with the manner in which snowmobiles are often operated in the State of Minnesota.  We might hope, in the interest of safety, that snowmobiles are

---

[4] Nelson argues that not covering snowmobiles would contravene the stated purpose of the No-Fault Act, which is "to relieve the severe economic distress of uncompensated victims of automobile accidents within this state . . . ." Minn. Stat. § 65B.42(1).  That is only one of several purposes enumerated in the No-Fault Act, however.   Other purposes include "correct[ing] imbalances and abuses in the operation of the automobile accident tort liability system, to provide offsets to avoid duplicate recovery," and "prevent[ing] the overcompensation of those automobile accident victims suffering minor injuries." Minn. Stat. § 65B.42(2), (5).  It is not at all clear that the Minnesota legislature intended for the one purpose Nelson cites to trump the Act's explicit language excluding snowmobiles from motor vehicle status.   The Court will therefore reject Nelson's argument as to the purpose of the No-Fault Act.

always driven on marked trails, well removed from the hazards of public roadways. But this ideal is far from the reality of Minnesota winters. Indeed, Minnesota has more registered snowmobiles than any other state in the United States – more than 250,000.[5] Snowmobiles may be primarily designed for off-road travel, but it is undeniable that they are frequently driven on snow- and ice-covered public roads. Many communities in Minnesota have officially recognized this by granting permission to operate snowmobiles on local public roads. *See, e.g.*, Albert Lea, Minn., Municipal Code, § 62-118; Bemidji, Minn., Municipal Code, § 24-79; Hibbing, Minn., Municipal Code § 8.50, subd. 5; Stillwater, Minn., Municipal Code § 51-6, subd. 2(1)(c).

As this case illustrates, the legislature's choice to exclude snowmobiles from the No-Fault Act's definition of "motor vehicles" can have significant financial consequences when snowmobiles are involved in crashes on public roadways, which occurred 28 times in Minnesota in 2013 alone.[6] The South Dakota legislature has already addressed this situation by covering snowmobiles under its mandatory motor vehicle insurance regime.[7] S.D. Codified Laws §§ 32-35-1(6) (defining "motor vehicle" for the purposes of the statutory section as "every vehicle which is self-propelled" and offering no exception or exclusion for snowmobiles), 32-35-113 (requiring liability insurance for

---

[5] Maya Rao, *For snowmobilers, 2014 was a deadly year*, StarTribune, (Jan. 6, 2015), http://www.startribune.com/local/287426421.html.

[6] *See* Minnesota Department of Public Safety, Minnesota Motor Vehicle Crash Facts 2013, at 20 (2014) (internal report pagination), *available at* https://dps.mn.gov/divisions/ots/reports-statistics/Documents/2013-crash-facts.pdf.

[7] South Dakota Game, Fish & Parks, *Snowmobile Rules & Regulations*, http://gfp.sd.gov/to-do/snowmobile/rules-regs.aspx (alerting snowmobile riders that they must provide proof of liability insurance if stopped by a law enforcement officer for another offense).

owners of motor vehicles).  Unless and until snowmobiles are covered by the No-Fault Act, Minnesota courts have little relief to offer victims of public roadway collisions with uninsured snowmobiles, even where those victims would likely be entitled to insurance benefits if the snowmobile were, instead, another motor vehicle.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment [Docket No. 16] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  May 18, 2015  
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge